UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-00347-GNS

STEPHEN GRAINGER                                                      PLAINTIFF

v.

HOSKIN & MUIR, INC.
d/b/a CARDINAL SHOWER ENCLOSURES                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Partial Motion to Dismiss (DN 6). This matter is now ripe for adjudication. For the reasons that follow, the motion is **DENIED.**

### I.    BACKGROUND

**A.    Statement of Facts**

This case arises from the alleged wrongful termination of Plaintiff Stephen Grainger ("Grainger") by Defendant Hoskin & Muir, Inc., d/b/a Cardinal Shower Enclosures ("Cardinal"). (Compl. 2, DN 1-2). Cardinal is a fabrication, tampering, and distribution business for shower enclosures, commercial glazing systems, and artisan glass. (Compl. ¶ 2).

Grainger began working for Cardinal some 18 years ago, primarily charged with cutting glass to make "demo boxes." (Compl. ¶ 8). Grainger was first granted medical leave in approximately May 2017 for a "foot issue," but he quickly returned to work later that month. (Compl. ¶ 10). Grainger's work release form noted that he should not have "prolonged standing or walking" and that he should be placed on "limited duty" with "sedentary work." (Compl. Ex. 2, DN 1-2). Grainger alleges that he returned to his former position and received a chair as accommodation. (Compl. ¶ 10).

1

In August 2017, Grainger had further difficulties with his foot and underwent two surgeries to correct the problem, resulting in medical leave beginning on August 21, 2017. (Compl. ¶ 11; Compl. Ex. 3, DN 1-3). Based on the recommendation of Dr. Matthew Jung ("Dr. Jung"), Grainger's return-to-work was postponed several times, and he did not return to Cardinal until March 19, 2018.[1] (Compl. ¶¶ 12-16). Dr. Jung qualified his opinion that Grainger could return to work on the basis that he should have the "limitation of limited standing and limited walking" and must "wear his pressure relief shoes . . . ." (Compl. Ex. 7, DN 1-7). As such, Cardinal placed Grainger in a temporary, full-time position in the Clerical—Logistics Office, paying him his previous hourly rate. (Compl. ¶ 17; Compl. Ex. 8, DN 1-8). Cardinal specified that "the duration of this position will be for up to 30 days, at which time your status will be re-evaluated." (Compl. Ex. 8). On April 12, 2018, Dr. Jung informed Cardinal that Grainger's previous limitations on standing and walking should remain in place at least until his reevaluation on May 10, 2018. (Compl. Ex. 10, DN 1-10). On April 13, 2018, Grainger was fired by Cardinal "due to the continuation of [Grainger's] current restrictions without change, combined with lack of light duty work available for personal injuries." (Compl. Ex. 11, DN 1-11).

Grainger filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 6, 2018.[2] (Def.'s Mot. Dismiss Ex. 1, DN 6-2). The EEOC issued a Right to Sue Letter on May 3, 2019. (Compl. Ex. 1, DN 1-1).

**B.      Procedural History**

On May 8, 2019, Grainger filed the present action alleging violations of the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), and the Kentucky Civil

---

[1] Grainger was on medical leave for a total of 209 days.
[2] Two hundred and thirty-seven days passed between Grainger's termination on April 13, 2018, and the date he filed his EEOC charge, December 6, 2018.

Rights Act (KCRA). (Compl. ¶¶ 25-44). On June 6, 2019, Cardinal moved to dismiss Counts II and III of the Complaint—the ADA and KCRA claims, respectively—for failure to state a claim. (Def.'s Mot. Dismiss 1, DN 6). Grainger responded, and Cardinal replied. (Pl.'s Resp. Def.'s Mot. Dismiss, DN 7; Def.'s Reply Mot. Dismiss, DN 8).

## II. JURISDICTION

The Court has subject matter jurisdiction over this action via federal question pursuant to 28 U.S.C. § 1331. The Complaint alleges violations of the FMLA and the ADA, both which present federal questions. (Compl. ¶¶ 25-28). The Court has supplemental jurisdiction over the KCRA claim because it arises from the same case and controversy as the federal claims. 28 U.S.C. § 1367(a).

## III. STANDARD OF REVIEW

In order to survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). Even so, the Court need not accept a party's "bare assertion of legal conclusions." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citation omitted). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

# IV. DISCUSSION

Cardinal argues that Grainger's ADA and KCRA claims should be dismissed because: (1) Grainger has not sufficiently pleaded that he has a disability under the ADA; (2) he has not sufficiently pleaded that he has a disability under the KCRA; and, (3) he has failed to timely exhaust his administrative remedies for the ADA claim. (Def.'s Mem. Supp. Mot. Dismiss 3-12, DN 6-1).

## A. The Americans with Disabilities Act

Under the ADA it is illegal for a covered employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA") to expand the definition of "disability."[3] *Milholland v. Sumner Cty. Bd. of Educ.*, 569 F.3d 562, 566 (6th Cir. 2009). Disability is now defined to include an individual who has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (*as described in paragraph (3)*)." 42 U.S.C. § 12102(1) (added language emphasized).

The applicable EEOC regulations define a physical impairment as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech

---

[3] Most relevant here, the ADAAA provides rules of construction for the courts to follow, stating that "[t]he definition of disability in this chapter shall be construed in favor of *broad coverage* of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A) (emphasis added).

organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine . . . ." 29 C.F.R. § 1630.2(h)(1). Furthermore, the ADAAA provides a non-exhaustive list of what qualifies as a "major life activity," including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, *walking*, *standing*, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis added).

The relevant inquiry here then is whether, when viewing the facts in a light most favorable to Grainger, he has stated a plausible claim that (1) he has a physical impairment and (2) that this impairment substantially limits at least one major life activity. A physical impairment as defined by the EEOC embraces a very broad definition including "any physiological disorder" that affects a "body system." Grainger's foot condition, which allegedly has resulted in months of medical leave and which required two surgeries, clearly would meet this expansive definition. As such, Cardinal primarily focuses its arguments on the second prong, contending that Grainger has not "alleged facts to show he was substantially limited in one or more major life activities." (Def.'s Mem. Supp. Mot. Dismiss 5). Even so, Cardinal itself acknowledges that both walking and standing are major life activities under the ADAAA. (Def.'s Mem Supp. Mot. Dismiss 5).

Cardinal's contention is without merit. Both the Complaint and its attached supporting exhibits are replete with allegations that Grainger's ability to stand and walk were both significantly impaired by his foot condition. The work release allowing Grainger to first return to work in May 2017 indicated that he should have no "prolonged standing or walking." (Compl. Ex. 2). Similarly, a letter sent by Dr. Jung to Cardinal on January 25, 2018 noted that Grainger will need a position where "he is not ambulating on a regular basis" and indicated that Grainger's condition nearly required amputation of his right leg. (Compl. Ex. 4, DN 1-4). Even when Dr.

5

Jung allowed Grainger to return to work in March 2018, his approval was expressly conditioned on the "limitations of limited standing and limited walking." (Compl. Ex. 7). Finally, Dr. Jung again indicated in April 2018 that Grainger's "limitations on limited standing and limited walking remains the same until he is reevaluated May 10th." (Compl. Ex. 10). Dr. Jung further stated that there was a possibility that Grainger would "lose his leg if we are not able to heal it properly." (Compl. Ex. 4). Given clear indications of Grainger's limited ability to walk and stand set forth in the pleadings, the Complaint contains sufficient facts to state a plausible claim that he has a physical impairment that substantially limited at least one major life activity within the scope of the ADAAA's expanded definition of disability.

Cardinal primarily relies on two cases from this Court. (Def.'s Mem. Supp. Mot. Dismiss 5-6). These cases, however, are readily distinguishable. In *Thomas v. Dana Commercial Vehicle Products, LLC*, No. 4:13-CV-00041-JHM, 2014 WL 1329948 (W.D. Ky. Apr. 1, 2014), this Court determined that the plaintiff failed to state a plausible claim that he had a disability because he failed "to identify, even in general terms, his disability . . . to identify a specific medical condition for which he was regarded as disabled . . . [or] to identify how he is substantially limited in any major life activity." *Id.* at *4.

Similarly, in *Phelps v. Balfour, Commemorative Brands Inc.*, No. 3:11-CV-00622-CRS, 2013 WL 653542 (W.D. Ky. Feb. 21, 2013), the plaintiff pleaded that she suffered from "numerous medical conditions (including Arthritis, Bursitis, Obesity, Tendonitis, Diabetes, Anemia, and Atria Flutter) and was disabled within the meaning of the ADAAA." *Id*. at *5. Even so, the Court dismissed the plaintiff's ADAAA claim because she "made no factual statements as to the nature of her disability, nor does she show that her impairment substantially limits one or more of the major life activities." *Id.* at *6.

6

The present Complaint does not suffer from the same deficiencies. Unlike *Thomas* and *Phelps*, Grainger has described the medical condition that caused him to take medical leave and the major life activities that have been impacted by this condition. Specifically, Grainger has clearly stated and provided supporting documentation that he suffered from a vascular condition that impacted his ability to stand, walk, and perform certain types of work.

The parties are unclear which prong of the ADAAA's definition of disability they are analyzing—i.e. an impairment, a record of impairment, or being regarding by the employer as having such an impairment. 42 U.S.C. § 12102(1). Under the third definition—regarded as having such an impairment—the ADAAA clarifies that an individual perceived as having an impairment is deemed disabled "whether or not the impairment limits or is perceived to limit a major life activity." *Id*. § 12102(3)(A). Insofar as Cardinal *regarded* Grainger as having an impairment, Grainger does not even need to take the second step of showing that his impairment limited a major life activity. As this Court has noted, however, a "perceived disability claim may not be based on an impairment that is 'transitory and minor,' meaning having 'an actual or expected duration of 6 months or less.'" *Azzam v. Baptist Healthcare Affiliates, Inc*., 855 F. Supp. 2d 653, 661 (W.D. Ky. 2012) (quoting 42 U.S.C. § 12102(3)(B)).

Cardinal seizes on this point in its reply, arguing for the first time that Grainger merely had "a temporary and transitory issue with his foot." (Def.'s Reply Mot. Dismiss 1). This argument, however, in contradicted by the Complaint and attached exhibits. It is true that temporary restrictions, such as broken bones, are often not considered "substantially limiting" for purposes of the ADAAA. *See, e.g.*, *Ashby v. Amscan, Inc*., No. 3:15-CV-00643-GNS, 2017 WL 939324, at *3 (W.D. Ky. Mar. 9, 2017) (holding that a fractured foot that healed normally within eight weeks of the injury did not constitute a disability). As pleaded, however, Grainger's health condition is

7

not properly characterized as "temporary." His foot complications began in May 2017 and then escalated in August 2017. (Compl. ¶¶ 10-11; Compl. Ex. 2). While Grainger did return to work on March 19, 2018, Dr. Jung indicated that Grainger's limited standing and walking should remain until, at minimum, Grainger's re-evaluation on May 10, 2018. (Compl. ¶¶ 13, 16; Compl. Ex. 10). Even conservatively considering August 21, 2017, as the start date of Grainger's foot complications—i.e., when Grainger began his official medical leave—and May 10, 2018 as the end date—i.e., the last date in the record for which Grainger required limited standing and walking—Grainger's physical condition still lasted roughly 8½ months. (Compl. Ex. 2; Compl. Ex. 10). Thus, even under the "regarded as" prong Grainger's foot condition, as alleged, has ailed him long enough to extend beyond just a "temporary and transitory issue." 42 U.S.C. § 12102(3)(B).

### B. The Kentucky Civil Rights Act

The KCRA is modeled after the ADA and provides that it is unlawful for an employer "to refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual . . . because the person is a qualified individual with a disability . . . ." KRS 344.040(1)(a). The KCRA, however, still follows the ADA's pre-ADAAA definition of disability, such that plaintiffs bringing a claim under the KCRA do not receive the benefits of an expanded definition of disability. *Larison v. Home of the Innocents*, 551 S.W.3d 36, 43 (Ky. App. 2018) (citing *Azzam*, 855 F. Supp. 2d at 657 n.2). As such, the KCRA defines a disability as individual who has: "(a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual; (b) A record of such an impairment; or (c) Being regarded as having such an impairment." KRS 344.010(4). As the Kentucky Court of Appeals has stated:

> In order to establish a prima facie case of discrimination based on a disability, the plaintiff must show: (1) that he had a disability as that term is used under the statute

8

>(i.e., the Kentucky Civil Rights Act in this case); (2) that he was 'otherwise qualified' to perform the requirements of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment decision because of the disability.

*Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 706-07 (Ky. App. 2004).

As discussed above, Cardinal primarily contends that even if Grainger's foot condition rises to the level of a physical impairment, he still has not pleaded sufficient facts to show that the impairment substantially limits a major life activity. (Def.'s Mem. Supp. Mot. Dismiss 7). As an initial matter, the ADAAA primarily amended the third prong of disability as previously defined by the ADA. *See Milholland*, 569 F.3d at 566 ("The amended version of the ADA no longer requires the plaintiff bringing a claim under subpart (C) to show that the impairment limited her life activity, including working in a broad class of jobs."). Insofar as Grainger claims to be disabled under the first prong, KRCA's adherence to the ADA's prior scope of the third prong does not significantly impact the previous analysis. Thus, the conclusion above regarding Grainger's impaired ability to stand and walk apply with equal force here.

Moreover, the very Kentucky Supreme Court case that Cardinal relies on—*Howard Baer, Inc. v. Schave*, 127 S.W.3d 589 (Ky. 2003)—specifically noted that substantially limited means "unable to perform . . . or significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to . . . the average person . . . ." *Id.* at 593 (alterations omitted) (internal quotation marks omitted) (citation omitted)). In *Howard*, the plaintiff was still able to perform his job duties and other life activities "except for frequent lifting of forty or more pounds over his head." *Id*. Grainger, by contrast, has pleaded facts that his ability to perform the basic human functions of walking and standing impaired are compared to an average person.

Similarly, Cardinal's reliance on *Mathis v. Maryhurst, Inc.*, No. 3:14-CV-00100-CRS, 2014 WL 2200904, at *1 (W.D. Ky. May 27, 2014) is unavailing. In *Mathis*, the plaintiff did no more than plead that the defendant "perceived and regarded him as being disabled." *Id*. at *2. As discussed, the Complaint here has included substantially more detail regarding Grainger's foot condition than was provided by the plaintiff in *Mathis*.

Although the standard for what constitutes a disability under the KCRA is admittedly narrower than the revised standard of the ADAAA, Cardinal has failed to provide sufficient justification for dismissal of the KCRA claim. As such, Grainger has pleaded sufficient facts to state a claim for a violation of the KCRA.

### C. Timeliness of Filing with the EEOC

Finally, Cardinal argues that Grainger failed to timely file his claim with the EEOC, such that his ADA claim should be barred. (Def.'s Mem. Supp. Mot. Dismiss 9). The administrative remedy procedure for the ADA is governed by 42 U.S.C. § 12117(a), which follows the requirements set forth in Title VII via 42 U.S.C. § 2000e-5(e). This provision clearly states that a "charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1). This provision further states that when the aggrieved party "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . ." *Id*. Interpreting this statute, the Sixth Circuit has concluded that "[i]n deferral states, a plaintiff has 300 days to file a charge of discrimination with the EEOC regardless of whether or not a charge has been filed within 180 days with the appropriate state agency." *Jones v. AIRCO Carbide Chem. Co*., 691 F.2d 1200, 1201 (6th Cir. 1982) (citing

*Mohasco Corp. v. Silver*, 447 U.S. 807, 814 n.16 (1980)). "A plaintiff can demonstrate that she qualified for the 300-day deadline even if she did not file with the appropriate state agency by showing the existence of a worksharing agreement between the EEOC and the state agency." *Stewart v. Iams Co.*, No. C-1-05-390, 2010 WL 1258108, at *2 (S.D. Ohio Mar. 22, 2010) (citing *Berger v. Medina Cty. Ohio Bd. of Cty. Comm'rs*, 295 F. App'x. 42, 45 (6th Cir. 2008)). "A plaintiff need only demonstrate that such an agreement existed, not that the EEOC actually forwarded the complaint to the appropriate state agency." *Id*. (citing *Nichols v. Muskingum Coll.*, 318 F.3d 674, 678 (6th Cir. 2003)); *see also Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999) ("Usually, if the alleged discrimination occurred more than 180 days prior to the plaintiff's filing of an EEOC charge, claims implicating these actions are barred. However, if the alleged unlawful practice occurs in a 'deferral state,' in this case Ohio, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file suit within 300 days of the alleged discriminatory act." (internal citations omitted)).

Kentucky is a deferral state pursuant to its establishment of the Kentucky Commission on Human Rights ("KCHR"). *Maurya v. Peabody Coal Co.*, 823 F.2d 933, 934 (6th Cir. 1987). Furthermore, Grainger claims that there is a workshare agreement between the EEOC and the KCHR. (Pl.'s Resp. Def.'s Mot. Dismiss 5). As such, Grainger would be entitled to the 300-day filing window. Turning to the facts, Grainger was terminated on April 13, 2018, and filed his charge with the EEOC until December 6, 2018, some 237 days later. While Grainger did not himself file his claim with the KCHR within the 300-day prescribed window, the EEOC could have initiated the state proceeding on behalf of the complainant within the relevant time window. *See Love v. Pullman Co.*, 404 U.S. 522, 525 (1972) ("Nothing in the Act suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by

the complainant himself."). Therefore, under this well-established rule, Grainger timely filed his claim with the EEOC within the prescribed 300-day window.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Partial Motion to Dismiss (DN 6) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

December 6, 2019

cc: counsel of record